UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **MARILYN LEWIS** )<br>)<br>**Plaintiff,** )<br>)<br>v. )<br>)<br>**STATE FARM FIRE AND CASUALTY** )<br>**COMPANY,** )<br>**JOHNATHON RHETT MINSON, and** )<br>**RHETT MINSON AGENCY, INC.,** )<br>)<br>**Defendants.** ) | Case No. 25-CV-0274-CVE-MTS |

## OPINION AND ORDER

Before the Court is a motion to remand by plaintiff Marilyn Lewis (Dkt. # 23). Defendant State Farm Fire and Casualty Company ("State Farm") removed this case to federal court on the basis of diversity jurisdiction. Dkt. # 2. Plaintiff seeks remand, denying defendant State Farm's claim in its notice of removal that she fraudulently joined defendants Johnathon Rhett Minson and the Rhett Minson Agency, Inc., both of whom are citizens of Oklahoma, as co-defendants solely to defeat diversity jurisdiction. Dkt. # 23, at 6. Plaintiff seeks to remand the case to Mayes County District Court on the ground that she states viable claims against Minson for negligent procurement of insurance under Oklahoma law, and against Minson and the Rhett Minson Agency, Inc. for constructive fraud/negligent misrepresentation. Dkt. # 13.[1]

---

[1] Throughout plaintiff's motion, she refers to claims against "Lunn," presumably a typographical error meant to refer to "Minson" that resulted from copying and pasting pages from a motion to remand and brief in support previously filed by her attorneys in Stacy v. State Farm Fire & Casualty Co., No. 22-CV-883-W, 2022 WL 22715021 (W.D. Okla. Nov. 10, 2022), ECF No. 13. Dkt. # 23, at 19, 23. The Court will treat the arguments as pertaining to Minson.

I.

On April 1, 2016, plaintiff purchased a dwelling insurance policy from defendant State Farm.[2]  Dkt. # 33-4, ¶ 4; Dkt. # 2-3, ¶ 5.  Plaintiff purchased the policy through the offices of the Rhett Minson Agency, Inc., a captive State Farm agency located in Mayes County, Oklahoma, which Johnathon Rhett Minson owns and operates.  Dkt. # 33-4, ¶¶ 4-5; Dkt. # 2-3 ¶¶ 5-7, 8.  Plaintiff contacted the agency seeking "full replacement cost homeowners insurance coverage," specifically seeking "a policy that would fully replace the . . . roof in the event of a loss, without exclusion of any weather-related losses."  Id. ¶¶ 30-31.  Plaintiff states that an "[a]gent assured [her] he could obtain the requested coverage . . . [that] would replace the home (including the roof) to its pre-loss condition in the event of a covered loss."  Id. ¶ 32.  She claims that she received specific assurances that the coverage would include "comprehensive full replacement cost  coverage on the roof that would protect against all storm loss and damage—no matter how big or small."  Id. ¶ 33.  Plaintiff asserts that she was entitled to but received no notice that "certain types of hail damage were excluded under the policy."  Id. ¶ 49.

Around February 14, 2023, plaintiff's home was hit by a wind and hail storm, which allegedly damaged shingles and gutters, and caused water to infiltrate her home.  Id. ¶¶ 72-73.  A

---

[2] "Because 'the propriety of removal is judged on the complaint as it stands at the time of the removal,'" the Court looks to plaintiff's amended petition, as filed with the District Court of Mayes County, Dkt. # 2-3, to determine what facts have been alleged.  Salzer v. SSM Health Care of Okla. Inc., 762 F.3d 1130, 1133 (10th Cir. 2014) (quoting Pfeiffer v. Hartford Fire Ins. Co., 929 F.2d 1484, 1488 (10th Cir. 1991)).  Plaintiff's brief in support of her motion to remand includes a three-page factual background containing no citations to her complaint or amended complaint.  Dkt. # 23, at 7-10.  Although the Court may "pierce the pleadings, consider the entire record, and determine the basis of joinder by any means available" when fraudulent joinder is alleged, Dodd v. Fawcett Publ'ns Inc., 329 F.2d 82, 85 (10th Cir. 1964), the Court relies primarily on the facts as alleged in plaintiff's amended petition (Dkt. # 2-3) in making its findings.

State Farm claim specialist inspected the damage following the storm and found the damage to be less than the $1,375 deductible, which led to State Farm denying plaintiff's claim. Id. ¶ 74. Four months later, around June 18, 2023, plaintiff's roof was allegedly damaged again by another wind and hail storm, and again State Farm denied her claim because the damage was found to be less than her $1,434 deductible. Id. ¶ 75. Over one year later, around November 2, 2024, plaintiff's roof was allegedly damaged yet a third time by a wind and hail storm. Id. ¶ 76. State Farm again denied the claim because the damage was less than her $1,500 deductible. Id. On January 27, 2025, State Farm notified plaintiff that it had cancelled her policy due to "the loss history." Id. ¶ 81. From these facts, plaintiff asserts that the agent misrepresented the policy as a "full replacement" policy without informing plaintiff of gaps in the policy, State Farm failed to consider or identify damage, and State Farm's actions reflect that it never intended to pay for damage despite the agent's representations. Id. ¶¶ 84-85. Plaintiff alleges that State Farm's denial of her claims and cancellation of her policy was part of a scheme State Farm is engaged in, in which State Farm and its agents "wrongfully den[y] its insureds' claims for damage to their [i]nsured [p]roperty caused by wind and/or hail without true justification." Id. ¶¶ 2-3.

On February 13, 2025, plaintiff filed a petition in Mayes County District Court, asserting four claims. Dkt. # 2-2. She amended her petition on March 6, 2025, Dkt. # 2-3, and defendant State Farm removed the action to this Court on June 3, 2025, Dkt. # 2. Before this Court, plaintiff pursues four claims: one claim for breach of contract, and one claim for breach of the duty of good faith and fair dealing against State Farm; one claim for negligent procurement of insurance against Minson; and one claim for constructive fraud/negligent misrepresentation against State Farm, Minson, and the Rhett Minson Agency, Inc. Id. ¶¶ 110-46. State Farm moved to partially dismiss plaintiff's

3

claim for fraud by misrepresentation. Dkt. # 17. The Rhett Minson Agency, Inc. moved to dismiss plaintiff's claim for constructive fraud/misrepresentation under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. Dkt. # 18. Minson moved to dismiss plaintiff's claims for negligent procurement of insurance and constructive fraud/negligent misrepresentation also under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. Dkt. # 20. Before responding to these motions, plaintiff moved to remand. Dkt. # 23. State Farm responded. Dkt. # 33. Plaintiff's motion to remand is ripe for review.

## II.

Because federal courts are courts of limited jurisdiction, there is a presumption against the exercise of federal jurisdiction. Merida Delgado v. Gonzalez, 428 F.3d 916, 919 (10th Cir. 2005); Marcus v. Kan. Dep't of Revenue, 170 F.3d 1305, 1309 (10th Cir. 1999); Penteco Corp. v. Union Gas Sys., Inc., 929 F.2d 1519, 1521 (10th Cir. 1999). If a federal district court could exercise jurisdiction over a civil action filed in state court, a defendant may remove the action. Salzer v. SSM Health Care of Okla., Inc., 762 F.3d 1130, 1134 (10th Cir. 2014) (citing 28 U.S.C. § 1441(a)). However, "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction," 28 U.S.C. § 1447(c), the federal court must "remand [the] removed action back to state court," Salzer, 762 F.3d at 1134. The party seeking federal jurisdiction bears the burden of establishing that the Court has subject-matter jurisdiction. McNutt v. Gen. Motors Acceptance Corp., 298 U.S. 178, 182 (1936); Montoya v. Chao, 296 F.3d 952, 955 (10th Cir. 2002). "It is well-established that statutes conferring jurisdiction upon the federal courts, and particularly removal statutes, are to be narrowly construed in light of our constitutional role as limited tribunals." Pritchett v. Office Depot, Inc., 420 F.3d 1090, 1095 (10th Cir. 2005) (citing Shamrock Oil & Gas

4

Corp. v. Sheets, 313 U.S. 100, 108-09 (1941); United States ex. rel. King v. Hillcrest Health Ctr., 264 F.3d 1271, 1280 (10th Cir. 2001)). To determine whether remand is appropriate, a Court must strictly construe the removal statute and resolve all doubts against removal. Fajen v. Found. Res. Ins. Co., 683 F.2d 331, 333 (10th Cir.1982).

A defendant may remove a case to federal court if "district courts of the United States have original jurisdiction" over the case. 28 U.S.C. § 1441(a). Under 28 U.S.C. § 1332, federal courts have "original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different states." The Supreme Court has construed § 1332 to require complete diversity, and a "plaintiff must meet the requirements of the diversity statute for each defendant." Newman-Green, Inc. v. Alfonzo-Larrain, 490 U.S. 826, 829 (1989) (emphasis in original). A litigant's "right of removal cannot be defeated by a fraudulent joinder of a resident defendant having no real connection with the controversy." Wilson v. Republic Iron & Steel Co., 257 U.S. 92, 97 (1921). In such a case, the party seeking removal bears the burden of showing that there is "no possibility that [plaintiff] would be able to establish a cause of action against [the joined party] in state court." Montano v. Allstate Indem., No. 99-CV-2225, 2000 WL 525592, at *2-3 (10th Cir. Apr. 14, 2000) (unpublished opinion)[3] (alterations in original) (quoting Hart v. Bayer Corp., 199 F.3d 239, 246 (5th Cir. 2000)). That showing must "compel[] the conclusion that the joinder is without right and made in bad faith," in that it "was without any reasonable basis." Chicago, R.I. & P. Ry. Co. v. Whiteaker, 239 U.S. 421, 425 (1915) (quoting Chesapeake & O.R. Co. v. Cockrell, 232 U.S. 146, 152 (1914)). A defendant

---

[3] Unpublished decisions are not precedential, but they may be cited for their persuasive value. See FED. R. APP. 32.1; 10TH CIR. R. 32.1.

may show fraudulent joinder either by (1) showing "actual fraud in the pleading of jurisdictional facts" or (2) demonstrating the "inability of the plaintiff to establish a cause of action against the non-diverse party in state court." Dutcher v. Matheson, 733 F.3d 980, 988 (10th Cir. 2013) (quoting Cuevas v. BAC Home Loans Servicing, LP, 648 F.3d 242, 249 (5th Cir. 2011)). If a defendant prevails in showing that all non-diverse defendants were fraudulently joined and the remaining parties are completely diverse, then the court has subject-matter jurisdiction. Am. Nat. Bank & Tr. Co. v. Bic Corp., 931 F.2d 1411, 1412 (10th Cir. 1991) ("If, as defendant suggests, plaintiffs joined the Oklahoma residents without good faith, defendant may remove on the grounds of fraudulent joinder.").

"The case law places a heavy burden on the party asserting fraudulent joinder." Montano, 2000 WL 525592, at *1. When a defendant raises "specific allegations of fraudulent joinder, the court may pierce the pleadings" and "consider the entire record, and determine the basis of joinder by any means available." Smoot v. Chicago, Rock Island & Pac. R.R. Co., 378 F.2d 879, 882 (10th Cir. 1967); Dodd v. Fawcett Publ'ns, Inc., 329 F.2d 82, 85 (10th Cir. 1964). "After resolving disputed questions of fact and ambiguities in favor of the plaintiffs, the court then determines whether they have 'any possibility of recovery against the party whose joinder is questioned.'" Asbury v. N. Star Mut. Ins. Co., No. 14-CV-1331-HE, 2015 WL 588607, at *1 (W.D. Okla. Feb. 11, 2015) (quoting Montano, 2000 WL 525592, at *1). "[T]he court must decide whether there is a reasonable basis to believe the plaintiff might succeed in at least one claim against the non-diverse defendant." Nerad v. AstraZenica Pharms., Inc., 203 F. App'x 911, 913 (10th Cir. 2006). "A 'reasonable basis' means just that: the claim need not be a sure-thing, but it must have a basis in the alleged facts and the applicable law." Id. Although the Court can pierce the pleadings, it cannot

"pre-try, as a matter of course, doubtful issues of fact to determine removability; the issue must be capable of summary determination and be proven with complete certainty." Smoot, 378 F.2d at 882. When challenged on the matter of diversity jurisdiction, "the parties must support their allegations by competent proof." Hertz Corp. v. Friend, 559 U.S. 77, 96-97 (2010).

### III.

The issue before the Court is whether plaintiff has alleged any possible basis for recovery against Minson for negligent procurement of insurance and constructive fraud/negligent misrepresentation, and against the Rhett Minson Agency, Inc. for constructive fraud/negligent misrepresentation.

    **A.**    **Negligent Procurement Claim (Count III)**

With regard to the negligent procurement claim against Minson (count III), Oklahoma law recognizes that insurance agents have a duty "to act in good faith and use reasonable care, skill and diligence in the procurement of insurance and an agent is liable to the insured, if, by the agent's fault, insurance is not procured as promised and the insured suffers a loss." Swickey v. Silvey Cos., 979 P.2d 266, 269 (Okla. Civ. App. 1999). This duty arises out of the agent's "specialized knowledge [about] the terms and conditions of insurance policies generally." Rotan v. Farmers Ins. Grp. of Cos., 83 P.3d 894, 895 (Okla. Civ. App. 2003) (quoting Swickey, 979 P.2d at 269). It applies to an agent in exercising "reasonable care and skill in performing its tasks, i.e. procuring insurance and making any necessary corrections or adjustments after a policy is issued." Swickey, 979 P.2d at 269. Oklahoma law also does not impose on agents any affirmative duty to advise their clients about possible insurance needs, but agents must "offer coverage . . . for needs that are disclosed by the insured." Asbury, 2015 WL 588607, at *2 (quoting Rotan, 83 P.3d at 895).

There is no dispute that plaintiff requested and State Farm issued a replacement cost policy for plaintiff's dwelling, including her roof, which was in effect during the three storms that plaintiff states caused damage to her roof. Dkt. # 2-3, ¶¶ 5, 72-83; Dkt. # 33, at 11. It is well-settled law that an agent is not liable for negligent procurement when, as here, "State Farm denied the claim not because of the type of policy [the agent] procured, but because it determined that [the plaintiff's] roof did not sustain a covered loss." Rain Drop Found., Inc. v. State Farm Fire & Cas. Co., No. 24-CV-1101-D, 2025 WL 582562, at *4 (W.D. Okla. Feb. 21, 2025) (quoting Steinkamp v. State Farm Fire & Cas. Co., No. 22-CV-0047-PRW, 2023 WL 11920886, at *5 (W.D. Okla. Sept. 29, 2023)). Like the litany of other cases State Farm cites in its response, Dkt. # 33, at 20, judges in federal courts in Oklahoma have observed that once a plaintiff receives the replacement cost value policy requested, that plaintiff will be unable to show that "by the agent's fault, insurance [was] not procured as promised." Barlow v. State Farm Fire & Cas. Co., No. 25-CV-44-R, 2025 WL 1139489, at *3 (W.D. Okla. April 17, 2025) (quoting Swickey, 979 P.2d at 269); Porter v. State Farm Fire & Cas. Co., No. 25-CV-187-R, 2025 WL 1151682, at *3 (W.D. Okla. April 18, 2025); Cisneros v. State Farm Fire & Cas. Co., No. 25-CV-42-R, 2025 WL 1151685, at *3 (W.D. Okla. April 18, 2025); Gamble v. State Farm Fire & Cas. Co., No. 25-CV-396-R, 2025 WL 2997887, at (W.D. Okla. Oct. 24, 2025); Eldridge v. State Farm Fire & Cas. Co., No. 25-CV-0035-CVE, 2025 WL 1355150, at *3 (N.D. Okla. May 9, 2025). "This is not a situation where [p]laintiff['s] insurance claim was denied because the type of policy, type of coverage, or coverage limit was different than what was requested." Porter, 2025 WL 1151682, at *3. Plaintiff asserts that Minson is operating as part of a larger scheme, carried out by agents at the behest of State Farm, see Dkt. # 2-3, ¶¶ 13-29; however, the allegations as to Minson's actions do not give rise to a claim for negligent procurement whereby the

8

coverage offered differed from the coverage requested. As such, plaintiff's dispute lies with State Farm in the denial of her claim, not with the agent for procuring her policy. Given that the parties are in agreement that plaintiff received the replacement cost value policy, plaintiff will not be able to state a viable claim against Minson for negligent procurement.

### B. Constructive Fraud/Negligent Misrepresentation Claim (Count IV)

Plaintiff alleges a claim of constructive fraud/negligent misrepresentation (count IV) against all defendants. Dkt. # 2-3, ¶¶ 133-46. Under Oklahoma law, to plead constructive fraud and negligent misrepresentation, a plaintiff must prove by clear and convincing evidence that there was a "breach of duty which, without an actually fraudulent intent, gains an advantage to the person in fault, or any one claiming under him, by misleading another to his prejudice . . . ." OKLA. STAT. tit. 15, § 59 (2025). Although an insurance agent does not have an affirmative duty to disclose all aspects of coverage provided, Rotan, 83 P.3d at 895, a claim for constructive fraud may arise if "a party selectively discloses facts that creates a false impression," Specialty Beverages, LLC v. Pabst Brewing Co., 537 F.3d 1165, 1181 (10th Cir. 2008), or, conversely, if the party conceals "material facts which one is bound under the circumstances to disclose," Bankers Tr. Co. v. Brown, 107 P.3d 609, 613 (Okla. Civ. App. 2005).

Plaintiff identifies several statements and omissions Minson made to her, based on her requests, that she argues support a viable claim for constructive fraud. Plaintiff alleges repeatedly that she communicated to her agent that she was seeking a policy that would "fully replace [her] roof in the event of storm damage." See, e.g., Dkt. # 2-3, ¶¶ 24, 31-34, 36, 43-45. Plaintiff states that Minson told her that the policy "would replace the home (including the roof) to its pre-loss condition in the event of a covered loss," id. ¶ 32 (emphasis added), that the policy "provided full replacement

9

on the roof for years—the coverage was presented to [p]laintiff as such that would fully replace [p]laintiff's roof in the event of storm damage," id. ¶ 24, that it would offer "comprehensive full replacement cost coverage on the roof that would protect against all storm loss and damage—no matter how big or small," id. ¶ 33, that it would "fully replace his [sic] roof for any weather-related damage," id. ¶ 36.[4] As discussed supra, the policy requested as to plaintiff's roof and coverage is the policy she received. Her policy did provide full replacement coverage; however, it did so under the condition that a deductible amount had to be met for loss to be covered, as was repeated throughout her policy. Id. ¶¶ 74-77, 81; see Dkt. # 2-7, at 6 ("Section: All Losses 1/2 %; Deductible Amount: $ 1,500"), 26 ("In case of loss under this policy, we will pay, subject to specified policy limits, only that part of the amount of the loss that exceeds the deductible amount shown in the Declarations. Deductibles will be applied per occurrence. Deductibles apply to specific losses as described in this policy."), 30-32 (describing specific coverage to which deductibles do and do not apply). Under Oklahoma law, an insured has a duty "to examine, read, and know the contents of the policy before accepting and paying the premium therefor, and, having failed or neglected to do so, . . . is estopped from denying knowledge of its terms and conditions." Liverpool & L. & G. Ins. Co. v. T.M. Richardson Lumber Co., 69 P. 936, 937 (Okla. 1902).

At bottom, the policy that plaintiff actually procured is not at issue. At issue are the extent of the damage suffered, the valuation of the damage as less than plaintiff's deductible, and the adequacy of the shingle replacements offered, none of which contradicts the statements Minson

---

[4] In plaintiff's motion, she also asserts that Minson said "she was 'completely covered' from any loss and that she 'had nothing to worry about.'" Dkt. # 23, at 10 (no citation). Minson denies that he made either of these statements. Dkt. # 33-4, ¶ 8. The Court construes all facts in the light most favorable to plaintiff and even pierces the pleadings to go beyond the facts alleged to discern whether from all facts available plaintiff could state a viable claim.

allegedly made. This characterization is consistent with plaintiff's own assertion, that "[i]nstead of acknowledging the wide spread damage to [p]laintiff's roof and the futility of any repair, State Farm denied the existence of any hail damage to [p]laintiff's roof." Id. ¶ 78. Even if Minson made the statements plaintiff imputes to him, plaintiff fails to establish a nexus between Minson's representations regarding her policy's coverage and State Farm's coverage determination that the hail storm caused minimal damage to her roof such that her deductible was not met. As other federal judges in Oklahoma have observed, "purchasing a replacement cost policy 'does not mean that an insured is guaranteed that its claims will always be paid in full.'" Rain Drop, 2025 WL 582562, at *5 (quoting Marino v. State Farm Fire & Cas. Co., No. 22-CV-885-HE, 2023 WL 11915691, at *4 (W.D. Okla. Aug. 7, 2023)). This Court agrees. Plaintiff has not alleged a viable claim for constructive fraud/negligent misrepresentation against Minson.

      Finally, the Court turns to whether plaintiff has a possible claim against the Rhett Minson Agency, Inc. for constructive fraud/negligent misrepresentation (count IV). In her motion to remand, plaintiff states that she intends to "amend her petition to note that any and all allegations made against Johnathon Rhett Minson the State Farm agent are also made against the Rhett Minson [A]gency [Inc.] that bears his name and sells State Farm policies on his behalf and under his license." Dkt. # 23, at 6. However, plaintiff has not sought leave to amend her complaint. As they are currently pled, neither plaintiff's complaint (Dkt. # 2-3) nor her brief in support of her motion to remand (Dkt. # 23) mentions the role the agency played or even discusses a single act taken by the agency in procuring her policy and in adjusting her claim. Indeed, the only mention of the agency is in alleging that Minson "owns and operates a [c]aptive State Farm agency," which is never identified by name. Dkt. # 2-3, ¶ 7. Plaintiff's sole basis for relief against the agency is Minson's

use of "his name and photograph" on the agency's web page and Minson's association with the Rhett Minson Agency, Inc. in agency advertising. Dkt. # 23, at 6 n.1. On these facts alone, the Court has no means to discern whether the agency acted in a way that could give rise to a claim for constructive fraud/misrepresentation. And even if the Court were to, albeit improperly, attribute Minson's actions to the Rhett Minson Agency, Inc., for the reasons discussed above, plaintiff's claims arise out of State Farm's determination regarding the damage sustained by her roof, not the terms of the policy that Minson (or the Rhett Minson Agency, Inc.) procured for plaintiff. State Farm has, therefore, met its heavy burden of showing that neither Minson nor the Rhett Minson Agency, Inc. made misleading representations about the scope of coverage under plaintiff's policy. Plaintiff has no possible basis on which to state a claim for constructive fraud/negligent procurement against either Minson or the Rhett Minson Agency, Inc. The Court finds that Minson and the Rhett Minson Agency, Inc. were fraudulently joined in this case.

**IT IS THEREFORE ORDERED** that plaintiff's motion to remand (Dkt. # 23) is **denied**. Plaintiff's claims against defendants Johnathon Rhett Minson and the Rhett Minson Agency, Inc. are dismissed based on fraudulent joinder. Johnathon Rhett Minson and the Rhett Minson Agency, Inc. are **terminated** as parties to this case. **The remaining parties are instructed to amend the case caption accordingly**.

**IT IS FURTHER ORDERED** that the motions to dismiss by defendants the Rhett Minson Agency, Inc. (Dkt. # 18) and Johnathon Rhett Minson (Dkt. # 20) are **moot**.

**DATED** this 22nd day of January, 2026.

_____
CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE